JODI LINKER
Federal Public Defender
Northern District of California
GRAHAM ARCHER
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:         Graham_Archer@fd.org


Counsel for Defendant Taylor


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LOVELL TAYLOR,<br><br>Defendant. | **Case No.:** CR 21–00242 YGR<br><br>**MOTION, NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**<br><br>**Court:**        Courtroom 1, 4th  Floor<br>**Hearing Date:**  July 21, 2022<br>**Hearing Time:**  9:00 a.m. |

**TO:  STEPHANIE M. HINDS, UNITED STATES ATTORNEY**
**KEVIN YEH, ASSISTANT UNITED STATES ATTORNEY**

PLEASE TAKE NOTICE that Lovell Taylor, through counsel, moves this Court for an order

suppressing evidence. The motion will be heard on July 21, 2022, at 9 a.m. *See* Dkt.32.

In this motion, Mr. Taylor moves for an order suppressing all fruits of unconstitutional

searches, seizures, and interrogations that occurred on October 15, 2020. Mr. Taylor also moves the

Court for an evidentiary hearing on any contested issues of fact. The motion is based on this notice

and motion; the attached memorandum of points and authorities, declaration, and exhibits; the

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; all other

applicable authority; and such evidence and argument as may be presented at the hearing of this motion.

## INTRODUCTION

During the traffic stop of a car in which Mr. Taylor was a passenger, a Contra Costa County Sheriff's Department ["CCCSD"] deputy asked all four people in the car for their identification. The deputy also asked all four people in the car if they were on probation or parole. The deputy then used the driver's licenses to conduct records checks on all four people in the car.

The deputy searched Mr. Taylor. The deputy arrested Mr. Taylor. The deputy questioned Mr. Taylor and the other car occupants about a gun in the car without first advising them of their *Miranda* rights. And the deputy searched the car, and a jacket and handbag within the car.

The initial police seizure of Mr. Taylor and the prolongation of the seizure, without a warrant, are presumed unconstitutional, as was his warrantless arrest. The police questioning of Mr. Taylor and the other occupants without first advising them of their rights is illegal. The warrantless searches of Mr. Taylor, the car, and a jacket and handbag within the car, also are presumed unconstitutional. Unless the government carries its burden of establishing that the warrantless seizure, prolonged seizure, arrest and searches, and the un-*Mirandized* interrogation, do not violate the law, all fruits of the illegal police conduct must be suppressed.

## RELEVANT FACTS

CCCSD policy requires that police-car dash cameras or body-worn cameras "shall be activated as soon as practical and safe to record . . . "[a]ll vehicle stops." *See* Exhibit 1 to Declaration of Graham Archer ["Archer Decl."] at Bates 464. The government has not provided any video documentation of the traffic stop in this case. *See* Archer Decl. ¶ 3. The police report, Exhibit 2 to Archer Decl., does not include any explanation for any "circumstances [that] prevent[ed] a Deputy from recording such a contact." Exhibit 2 to Archer Decl. at Bates 461. In the apparent absence of any video recording, the facts recited herein are based on the police report.[1]

---

[1] Mr. Taylor does not concede the truth of any of the statements in the police report other than those necessary to establish the warrantless seizure of his person; the prolongation of that seizure; his warrantless arrest; the warrantless searches of his person, the car and the jacket and hand bag therein; and the un-*Mirandized* police questioning.

MOTION TO SUPPRESS
*TAYLOR*, CR 21–00242 YGR

2

In the early morning of October 15, 2020, CCCSD Deputy Dyer stopped a car for, allegedly, failing to come to a complete stop, speeding and failing to signal a lane change. *See* Exhibit 2 to Archer Decl. at Bates 14. After obtaining the driver's license, Deputy Dyer asked the other three occupants of the car for identification. *Id.* The other three occupants of the car, including Mr. Taylor, who was in the right rear passenger seat, gave their licenses to Deputy Dyer. *Id.*

Deputy Dyer then asked all the occupants of the car if they were on probation or parole. *Id.* Mr. Taylor responded to the deputy's question that he was on parole and had recently been released from jail. *Id.* Thereafter, Deputy Dyer ran records checks on four occupants of the car. *Id.*

Deputy Dyer then directed Mr. Taylor to get out of the car and searched him. *Id.* Deputy Dyer told Mr. Taylor to sit on the curb between the car and the police car. *Id.* Deputy Dyer then questioned Mr. Taylor about whether there was anything illegal in the car -- and specifically whether "there was a firearm in the vehicle right now." *Id.* Deputy Dyer handcuffed Mr. Taylor. *Id.* He then ordered the rest of the occupants out of the car and handcuffed them. *Id.*

Deputy Dyer searched the car. *Id.* at Bates 15. He picked up a jacket from the rear passenger seat of the car. *Id.* He picked up a black handbag that had been underneath the jacket. *Id.* He unzipped the handbag. *Id.* In the handbag he found the gun that is the basis for the charge against Mr. Taylor in this case.

Deputy Dyer then advised Mr. Taylor of his *Miranda* rights, and Mr. Taylor declined to answer the deputy's questions about the gun. *Id.* Deputy Dyer questioned Teuila Failauga, who had been in the back seat of the car with Mr. Taylor. *Id.* at Bates 14-15. He did not advise Ms. Failauga of her *Miranda* rights before questioning her about the gun. *Id.* at Bates 15. Deputy Dyer also questioned the two front-seat occupants of the car without first advising them of their rights. *Id.*

## ARGUMENT

### I.   CCCSD Deputy Dyer's warrantless and prolonged seizure of Mr. Taylor is presumptively unconstitutional

"Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). When the government fails to carry its heavy burden, *id.* at 1142 n.1, all fruits of the Fourth

1   Amendment violation must be suppressed. *Id*. at 1143. The government here cannot establish that the

2   initial and particularly the prolonged warrantless seizure and arrest of Mr. Taylor did not violate the

3   Fourth Amendment.

### A.   The government must establish that the warrantless seizure of Mr. Taylor did not violate the Fourth Amendment

5   For the duration of a traffic stop, an officer effectively seizes "everyone in the vehicle."

6   *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Mr. Taylor was seized when Deputy Dyer stopped the

7   car in which he was a passenger. The deputy did not have a warrant for this seizure.

8   Accordingly, the government bears the burden of establishing that the warrantless seizure did

9   not violate the Fourth Amendment. Unless the government can do so, the seizure violated the Fourth

10  Amendment, and all fruits thereof must be suppressed.

### B.   The government must establish that the prolongation of the warrantless seizure of Mr. Taylor did not violate the Fourth Amendment

13  "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v.*

14  *United States*, 575 U.S. 348, 354 (2015). However, the duration of that seizure is determined by the

15  seizure's "mission" and may last only as long as necessary to effectuate that purpose. *Id.* An officer's

16  traffic-stop mission is limited to inquiries that serve the purpose of enforcing the vehicle code:

17  "checking the driver's license, determining whether there are outstanding warrants against the driver,

18  and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

19  By contrast, collecting or obtaining a *passenger's* identification "is not part of the mission of a

20  stop." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019). "The identity of a passenger . . .

21  will ordinarily have no relation to a driver's safe operation of a vehicle." *Id.* And when obtaining

22  identification from a traffic-stop passenger and running a check on that identification adds time to the

23  stop, the resulting prolongation of the seizure violates the Fourth Amendment. *United States v.*

24  *Maffei*, 417 F. Supp. 3d 1212, 1222-23 (N.D. Cal. 2019).

25  The same is true of asking the occupants of the car if they are on probation or parole. "This

26  Court has already held that questions relating to probation and parole are 'wholly unrelated to [an

27  officer's] mission of "ensuring that vehicles on the road are operated safely and responsibly."'" *United*

28  *States v. Odom*, 2022 WL 611206, at *3 (N.D. Cal. Mar. 2, 2022) (quoting *United States v. Ward*,

2017 WL 1549474, at *3 (N.D. Cal. 2017)); *accord United States v. Mati*, 466 F. Supp. 3d 1046, 1049 (N.D. Cal. 2020) (holding that "the otherwise lawful traffic stop became unlawful when the officers took time to look into whether [driver] was on probation or parole and whether he had a search condition"). Police thus violate the Fourth Amendment when they prolong a traffic stop to ask the car occupants about their probation and parole status.

Finally, asking car occupants if there is anything illegal in the car is "unrelated to the mission of the traffic stop." *United States v. Jones*, 438 F. Supp. 3d 1039, 1052 (N.D. Cal. 2020). As with asking for and checking passenger identifications and asking about probation and parole status, if questions about contraband in the car add time to the stop, they result in an unconstitutionally prolonged seizure. *Id.*

In this case, after stopping the car and obtaining the driver's license, Deputy Dyer (1) asked all three passengers for identification; (2) ran a check on each passenger's identification; (3) asked all four car occupants about probation and parole status; and (4) asked Mr. Taylor whether there was anything illegal in the car. Exhibit 2 to Archer Decl. at Bates 14. Each of these actions was unrelated to the traffic-stop mission. Each of these actions added time to the traffic stop. *See* CAD Report, Exhibit 3 to the Archer Decl. at Bates 4-5 (noting time of inquiry into each car occupant).

Accordingly, unless the government establishes independent, individualized reasonable suspicion, *Rodriguez*, 575 U.S. at 358, the prolongation of the warrantless seizure of Mr. Taylor violated the Fourth Amendment, and all fruits of the unconstitutional prolongation must be suppressed.

### C.   The government must establish that the warrantless arrest of Mr. Taylor did not violate the Fourth Amendment

The government bears the burden of establishing that a warrantless arrest falls within an established exception to the Fourth Amendment's warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Otherwise, a warrantless arrest without probable cause is unconstitutional. *Wong Sun v. United States*, 371 U.S. 471, 482 (1963). Courts must consider the "totality of the circumstances" to determine whether an official detention has ripened into an arrest. *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990). When doing so, courts must review the

1  situation from the perspective of the person seized. *United States v. Delgadillo-Velasquez*, 856 F.2d

2  1292, 1295 (9th Cir. 1988).

3         There has been an arrest if, under the circumstances, a reasonable person would conclude that

4  he was not free to leave after brief questioning. *United States v. Pinion*, 800 F.2d 976, 978–79 (9th

5  Cir. 1986). Courts can consider "both the intrusiveness of the stop (the aggressiveness of the methods

6  used by police and the degree to which the suspect's liberty was restricted) and the justification for

7  using those tactics (whether the officer had sufficient basis to fear for his or her safety warranting a

8  more intrusive action)." *United States v. Rousseau*, 257 F.3d 925, 929 (9th Cir. 2001). Factors

9  relevant to determining whether a seizure is a detention or an arrest

10          includ[e] whether the suspect was handcuffed; whether the police drew
          their weapons; whether the police physically restrict the suspect's liberty,

11          including by placing the suspect in a police car; whether special
          circumstances (such as an uncooperative suspect or risk of violence) are

12          present to justify the intrusive means of effective a stop; and whether the
          officers are outnumbered.

13  *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quotation marks omitted).

14         Deputy Dyer arrested Mr. Taylor when he directed Mr. Taylor to get out of the car, searched

15  him and then directed him to sit on the curb in a particular spot. Exhibit 2 to Archer Decl. at Bates 14.

16  The government bears the burden of showing that the deputy had probable cause at that time for this

17  warrantless arrest. Unless the government carries its burden, all fruits of the unconstitutional

18  warrantless arrest must be suppressed.

19  **II.    The government must establish that the warrantless search of Mr. Taylor did not violate
        the Fourth Amendment**

20

21         "A warrantless search is unconstitutional unless the government demonstrates that it falls

22  within certain established and well-defined exceptions to the warrant clause." *United States v. Brown*,

23  563 F.3d 410, 414 (9th Cir. 2009). It is the government's burden to persuade the Court that a

24  warrantless search does not violate the Fourth Amendment. *Id.* If the government fails to carry its

25  burden, all fruits of the search must be suppressed. *See, e.g., United States v. Caseres,* 533 F.3d 1064,

26  1076 (9th Cir. 2008) (reversing district court's denial of motion to suppress because government did

27  not carry its burden of justifying warrantless search).

28         Deputy Dyer searched Mr. Taylor, a passenger in a car stopped for alleged traffic violations.

Exhibit 2 to Archer Decl. at Bates 14. Deputy Dyer did not have a warrant for this search.

Accordingly, it was *per se* unconstitutional, and the government bears the burden of establishing that

it did not violate the Fourth Amendment.

### III.    The government must establish that the un-*Mirandized* questioning of Mr. Taylor and the other car occupants did not violate *Miranda* and the Fifth Amendment

The Fifth Amendment to the Constitution states that no person "shall be compelled in any

criminal case to be a witness against himself." U.S. Const. amend. V. To give effect to this

constitutional guarantee, police, before questioning, must advise criminal suspects that they have the

right to remain silent, that anything they say can be used against them in court, that they have the

right to have an attorney present during questioning and, if they cannot afford to hire an attorney, that

one can be appointed at no cost to represent them before questioning. *Miranda v. Arizona*, 384 U.S.

436, 479 (1966).

Here, Deputy Dyer questioned Mr. Taylor about "anything illegal" in the car, including,

specifically, a gun. Exhibit 2 to Archer Decl. at Bates 14. He did not advise Mr. Taylor of his rights

before this questioning. Deputy Dyer also questioned Ms. Failauga and the other two car occupants

about the gun in the car without first advising them of their *Miranda* rights. *Id.* at Bates 15. These un-

*Mirandized* interrogations were unlawful, and all fruits thereof must be suppressed.

### IV.    The government must establish that the warrantless searches of the car, jacket and handbag did not violate the Fourth Amendment

Deputy Dyer's searches of the car, jacket and handbag were unconstitutional initially and

independently as the fruit of his prior constitutional violations, discussed above. Even if there were

no prior constitutional violations, however, Deputy Dyer's warrantless searches of the car, jacket and

hand bag were *per se* unconstitutional. Unless the government carries its heavy burden of establishing

that these searches were not the fruit of the prior police illegality and were justified by an exception

to the warrant requirement, all fruits of these searches must be suppressed.

**CONCLUSION**

For the reasons stated above, Mr. Taylor respectfully asks the Court to suppress all fruits of the

(1) unlawful and prolonged warrantless seizure of Mr. Taylor; (2) the unlawful warrantless arrest of

Mr. Taylor; (3) the unlawful warrantless search of Mr. Taylor; (4) the unlawful un-*Mirandized*

1    questioning of Mr. Taylor and the other car occupants; and (5) the unlawful warrantless search of the

2    car, jacket and handbag.

3

4    Dated:      May 2, 2022                              Respectfully submitted,

5                                                         JODI LINKER
                                                          Federal Public Defender
6                                                         Northern District of California

7                                                              /S

8                                                         GRAHAM ARCHER
                                                          Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28